STATE OF NEW JERSEY, IN THE INTEREST OF R.G.W., JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 25, 1975—Decided June 30, 1975.

Before Judges MATTHEWS, FRITZ and BOTTER.

*Mrs. Rosemary K. Reavey,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. John P. Goceljak,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, attorney).

The opinion of the court was delivered by

FRITZ, J. A. D. Defendant, a juvenile, confessed to a brutal murder in which he, a newsboy, stabbed a female patron from whom he was collecting, some 36 times. He was formally charged with juvenile delinquency.

Two competency hearings were held, the first on February 25, 1974 and the second on May 10, 1974. In each case, the juvenile was adjudged unable to stand trial by reason of insanity and was committed to the Greystone Park Psychiatric Hospital. In the latter hearing the judge was urged to inquire with respect to and determine, pursuant to *N. J. S. A.* 2A:163-2, whether the juvenile was insane at the time of the offense. He declined, characterizing his determination in this regard as an exercise of discretion. Somewhat enigmatically he said that he "truthfully believes that no purpose will be served to trangress in the area of juvenile law that is yet to be established." Regretfully, and we believe incorrectly, he refused to act in this respect until such time as "our appellate courts, and perhaps our Supreme Court * * * have been given the opportunity faced with the facts that are presented to this Court to bring to bear their collective wisdom, and their collective expertise in the handling of these matters" and he had the benefit of "the philosophical direction of the highest court of our State to suggest a court of inferior jurisdiction what in their best judgment should be the course of action to follow."

Defendant appeals from this denial of his motion, urges the applicability of *N. J. S. A.* 2A:163-2, challenges the exercise of discretion in the denial, and asks that, in the event of a remand, we acknowledge that "there is a 'reasonable' limit to the length of time during which an individual incompetent to stand trial may be institutionalized in an asylum without having the question of his 'criminal responsibility' adjudicated."[1]

---

[1] We express our disapproval of procedure whereby defendant "advise[s] the Court that the juvenile incorporates as part of his appeal

The State does not challenge the applicability of *N. J. S. A.* 2A:163–2. Rather, it defends as correct the "exercise of discretion" below.

We get swiftly past the threshold question of the applicability of the statute. Juveniles have every right to a defense of insanity, and in fact "all defenses available to an adult." *N. J. S. A.* 2A:4–60. This postulate being statutorily sound, it is unthinkable that those rights should be abridged, even extinguished, by the failure of *N. J. S. A.* 2A:163–2 — which does not exclude application to juveniles — to include them specifically. We see no reason at all to suppose that the "any person" referred to in *N. J. S. A.* 2A:163–2 was not intended to include juveniles. Were the statute thought to direct otherwise, a constitutional question might well be presented. *State in the Interest of Carlo,* 48 *N. J.* 224 (1966). The holding of *State in the Interest of H. C.,* 106 *N. J. Super.* 583 (J. & D. R. Ct. 1969) was overriden by *N. J. S. A.* 2A:4–60 and no longer represents the law.

We turn to the reasons given by the judge below for his refusal to conduct that which he called a *M'Naghten* hearing. After expressing an opinion that *N. J. S. A.* 2A:163–2 applied, and determining that there were good reasons for holding a second hearing on the competency of defendant to consult with counsel and stand trial, the judge below turned to the question as to "whether this Court has the right to consider the substantive issue of M'Naughton insanity on the merits." There is no doubt at all as to the existence of that right. The expression of the question by the judge appears inconsistent with his conclusion that *N. J. S. A.* 2A:163–2 is applicable, for that statute confers the right upon the court. Whether circumstances impel a court,

---

all arguments and issues set forth in the brief" filed in the trial court, even when "with the consent of the * * * Prosecutor." The reasons for our disapproval should be at once apparent without statement to experienced and competent appellate counsel.

in the employment of its discretion, to exercise that right is a different matter.

Be this at it may, the judge then postulated in the following form the questions deemed by him to be controlling in exercising his discretion with respect to a *M'Naghten* hearing:

1. What degree of difficulty, effort and time would be required to determine the question of insanity, and

2. What is to be gained, justified by this difficulty, his effort and time, or in other words, will the welfare of the juvenile be sufficiently enhanced so as to cause the Court to invoke its discretion regardless of the problems and the difficulties involved.

He concluded, apparently as a matter of law judging from the citation of law and the absence of any findings at all correlated to the facts of the case before him, that "a full scale adversary hearing on the merits of the case would be required." He then turned to the "sole question" remaining, as to "whether such a hearing is justified under the present circumstances." As to this, the court concluded, again apparently as a matter of law because the determination is predicated upon a recitation of case law with no findings at all concerning circumstances of the present case, that "since no criminal liability or stigma can attach because of the pendency of the complaint, no real benefit could possibly accrue to the juvenile by virtue of the M'Naughton hearing."

Assuming without deciding that the two-question approach taken below is correct, we are satisfied that the benefit which might be derived by a defendant from a *M'Naghten* hearing is not to be measured in terms of criminal stigma *vel non* alone. In the first place, commitment upon a criminal charge, or, as here, a charge of juvenile delinquency tantamount to a criminal charge, in a case where defendant is not competent to stand trial, may presage an incarceration sufficiently indefinite to offend due process. See *Jackson v. Indiana,* 406 *U. S.* 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972). This is certainly so where a substantial probability

exists that defendant would never be able to participate competently in a trial. *Jackson v. Indiana, supra; cf. State v. Carter,* 64 *N. J.* 382 (1974). While we might speculate from the trial judge's comments and our review of the medical testimony and reports, we have no findings at all from the trial judge with respect to the likelihood of a return to competency sufficient to stand trial, an intelligently estimated predictive date, or a statement of reasons why such a finding is not feasible.

Further, irrespective of criminality *vel non* as a matter of semantics (to say nothing of sanctions), we are of the opinion that a very real right of the juvenile, jeopardized by the ruling below, is his right to avoid, in proper circumstances, the necessity to defend a complaint "years later after 'much of the evidence pertinent to the issue of insanity at the time of the offense may have been lost.' " *Aponte v. State,* 30 *N. J.* 441, 454 (1959). Indeed, the desirability of trial as quickly as possible under the various circumstances is engrafted upon our jurisprudence and ingrained in our constitutions. *State v. Davis,* 131 *N. J. Super.* 484 (App. Div. 1974).

We do not suggest that in all cases discretion is to be exercised in the direction of trying the issue of competency at the time of the crime. There will be times when such an inquiry should not be launched, as, for example, when incapacity to stand trial may be temporary or, reasonably predictably, not for long. *Farmer v. State,* 42 *N. J.* 579 (1964). And had the judge below arrived at his determination that that which he called a *M'Naghten* hearing should be postponed because of the likelihood of imminent return to competency sufficient to stand trial, record testimony might well have supported such a conclusion.

But the determination is a mixed question of law and fact, to be determined in accordance with the circumstances in each case, in accordance with all the foregoing. The determination below lacks the essential findings and cannot stand.

We remand for further hearing relating to whether judicial inquiry should be made as to the sanity of the accused at the time of the offense, all consistent with the foregoing. At that hearing additional testimony may be required or offered, and the judge below may, if he deems it advisable, consider again the question of defendant's present competency to confer with counsel and properly defend his interests at a hearing on the complaint. Needless to say, if defendant is presently competent, the inquiry regarding mental competency at the time of the crime may be but need not be separately tried, but in any event the plenary hearing should be expedited. We do not retain jurisdiction.

